UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

Ahmed Essani,

                              Plaintiff,

           -against-                                                **MEMORANDUM & ORDER**
                                                                    13-CV-03424 (DG) (SIL)

Kevin J. Earley, Terrence Nee, individually and as police
personnel of the Suffolk County, New York Police
Department, and County of Suffolk,

                              Defendants.

-------------------------------------------------------------------X

DIANE GUJARATI, United States District Judge:

        Plaintiff Ahmed Essani, proceeding *pro se*, commenced this action on June 14, 2013,

asserting a claim under 42 U.S.C. § 1983 ("Section 1983") against Kevin J. Earley and Terence

Nee (the "Officers") of the Suffolk County Police Department (the "SCPD") and against the

County of Suffolk (the "County") for violation of his "Fourth Amendment rights to be free from

false arrest, and malicious prosecution and excessive force," and asserting an unspecified claim

against Harvey Crosby for "acting jointly with [the Officers and] alleg[ing] factually untrue

statements about the plaintiff, which directly resulted in the wrongful arrest and prosecution of

the plaintiff."  Complaint at 4, ECF No. 1.

        After Crosby's death, Plaintiff filed the operative Amended Complaint, replacing Crosby

with his daughters, Cynthia Crafa and Nancy Western, as executrixes of the Estate of Harvey

Crosby (collectively, the "Estate").  Amended Complaint ("Am. Compl."), ECF No. 80.  The

Amended Complaint makes no mention of an excessive force claim against the Officers and the

County but, rather, alleges a Section 1983 violation based on Plaintiff's "false arrest, false

imprisonment and malicious prosecution."  *Id.* ¶¶ 2, 23.  On July 26, 2019, the Amended

1

Complaint was dismissed with prejudice as against the Estate, leaving just Plaintiff's claims against the Officers and the County (hereinafter, "Defendants"). *See* ECF No. 104 at 2.

Now before the Court is Defendants' motion for summary judgment filed on January 26, 2021. Motion for Summary Judgment, ECF No. 122; Statement Pursuant to Local Rule 56.1 ("Defs.' 56.1"), ECF No. 122-1; Defendants' Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 122-18. On February 25, 2021, Plaintiff opposed Defendants' motion. Plaintiff's Response and Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Br."), ECF No. 124. Plaintiff's opposition papers include a "Statement of Controverted Facts," which the Court considers to be effectively a Statement of Material Facts on Motion for Summary Judgment pursuant to Local Civil Rule 56.1 (a "Rule 56.1 Statement"). *See id.* at 3. Defendants filed their reply on March 3, 2021. Defendants' Reply Memorandum of Law, ECF No. 126.

For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

## BACKGROUND

### I.   Factual Background

Unless otherwise indicated, the following facts are undisputed or described in the light most favorable to Plaintiff, the non-moving party.[1]

Plaintiff's claims stem from a pair of encounters with the Officers that ultimately led to his arrest. Am. Compl. ¶¶ 8-11; Defs.' 56.1 ¶¶ 7-11.[2] Both encounters took place at a vehicle lot

---

[1] Any citation to Defendants' Rule 56.1 Statement incorporates by reference the documents cited therein. Plaintiff cites no documents in his Rule 56.1 Statement.

[2] Where the Court cites to both the Amended Complaint and Defendants' Rule 56.1 Statement, the allegations in the Amended Complaint comport with the factual statements supported by

located at 1485 Montauk Highway in Bellport, New York, which, according to the parties, Plaintiff had previously purchased from Crosby. *See* Defs.' 56.1 ¶ 2; Am. Compl. ¶¶ 8-9, 24 (alleging that the lot "had been sold to [P]laintiff by Mr. Crosby").

The first encounter occurred on June 15, 2010 at 10:00 a.m., when the Officers (for reasons unclear from the record) visited the lot and "ask[ed] questions of [P]laintiff" before "[going] away, after declaring that there was no evidence of wrongdoing engaged in by Plaintiff."  Pl.'s Br. at 3; *see also* Am. Compl. ¶ 9.

The Officers returned later the same day at approximately 4:30 p.m.  Pl.'s Br. at 3; Am. Compl. ¶ 8; Defs.' 56.1 ¶ 7.  Sometime prior to this second encounter – and perhaps prior to the first – the SCPD received a complaint from Crosby in which he reported that Plaintiff "was running an unregistered vehicle dismantling lot" at the site where the Officers found Plaintiff. Defs.' 56.1 ¶ 7; *see also* Am. Compl. ¶ 24 (identifying Crosby "as the complainant in connection with the alleged crime for which the plaintiff was charged and arrested" and alleging that Crosby told the Officers "that [P]laintiff had stolen cars on the property and was dismantling them and selling parts").

Upon arriving at the lot the second time, the Officers spoke with Plaintiff and inspected the lot.  Defs.' 56.1 ¶ 8; Am. Compl. ¶ 10.  While conducting their inspection, the Officers examined and took pictures of various vehicles and vehicle parts present at the lot.  Am. Compl. ¶ 10 (alleging that the Officers "t[ook] pictures, . . . open[ed] hoods of vehicles, [and] perform[ed] tasks on the vehicles, using various tools brought by them"); Defs.' 56.1 ¶ 10 (explaining that the Officers "took photos of the vehicles and vehicle parts present in the lot").

---

evidence in Defendants' Rule 56.1 Statement, and therefore there is no genuine dispute as to the proffered fact, even accepting as true the allegations in the Amended Complaint.

During the Officers' conversation with Plaintiff, Plaintiff on several occasions told the Officers

that the lot was his and that he did not have the state registration required to dismantle vehicles.

Defs.' 56.1 ¶ 9.  These facts are supported by a video recording of the second encounter, which

Plaintiff himself filmed and later had committed to a transcript.  Defs.' 56.1 ¶¶ 8-10; *see* ECF

No. 122-10 ("Ex. I") (cover page noting that the video was furnished to the Court); *see* ECF No.

122-11 ("Ex. J") (transcript of the video) at 5, 6, 8, 16.[3]

Following this encounter with Plaintiff, the Officers placed Plaintiff under arrest and

transported him to the Seventh Precinct of the SCPD, where Plaintiff claims he "was

interrogated."  Am. Compl. ¶¶ 10-12; *see* Defs.' 56.1 ¶ 11 ("At 5:50 PM, the detectives arrested

[Plaintiff] and transported him to the Suffolk County Police Department Seventh Precinct."

(citing ECF No. 122-13 ("Ex. L") (SCPD Prisoner Activity Log) and Ex. J)).

Plaintiff claims that, during this interrogation, he was not "advised of his right to remain

silent, nor of his right to have an attorney present during questioning."  Am. Compl. ¶ 13.  He

similarly claims that he was not, during either of the Officers' visits to the lot, "advised of any

right to remain silent, nor of his right to have an attorney present during questioning."  *Id.* ¶ 14.

Plaintiff was not placed in a cell while at the Precinct.  Defs.' 56.1 ¶ 13.  He was bailed from the

Precinct approximately two hours and forty minutes after his arrest.  *Id.* ¶ 14.

Plaintiff was ultimately charged with unregistered vehicle dismantling in violation of

New York Vehicle and Traffic Law § 415-a(1).  *See* ECF No. 122-15 ("Ex. N") (information

---

[3] Defendants have provided the Court with a copy of the video and mailed a copy of the video to
Plaintiff.  *See* Ex. I.  Although the video itself does not appear on the docket, Defendants have
submitted the transcript of the video that was prepared at Plaintiff's request.  *See* Ex. J.  The
Court has reviewed both the transcript and the video.  Where the Court cites to the transcript,
the Court has determined that the cited portion accurately reflects the video.

charging Plaintiff with "UNREGISTERED VEHICLE DISMANTLR" in violation of "NYS

VEHICLE & TRAFFIC LAW"); Am. Compl. ¶ 8.

On September 20, 2010, the charge against Plaintiff was dismissed pursuant to New York

Criminal Procedure Law Section 170.30.  Defs.' 56.1 ¶ 15; ECF No. 122-17 ("Ex. P") (copy of

District Court, County of Suffolk file jacket in *People v. Essani*, No. 2010SU027814, showing

Plaintiff's case as "DISM" pursuant to "170.30"); *see also* Am. Compl. ¶ 18 (alleging that the

charge was dismissed "pursuant to Criminal Procedure Law, Sections 160.50 and 170.30").

## II.    Procedural Background

Plaintiff filed his original Complaint on June 14, 2013, asserting claims against the

Officers, the County, and Crosby.  ECF No. 1.

After Crosby's death on April 7, 2016, Plaintiff filed an Amended Complaint, replacing

Crosby with the Estate.  ECF No. 80.  On July 26, 2019, the Amended Complaint was dismissed

with prejudice as against the Estate, leaving just Plaintiff's claims against the Officers and the

County.  *See* ECF No. 104 at 2.

Discovery closed on November 2, 2020, ECF No. 117, and Defendants moved for

summary judgment on January 26, 2021, ECF No. 122.  Plaintiff opposed the motion on

February 25, 2021, ECF No. 124, and Defendants filed a reply on March 3, 2021, ECF No. 126.

Together with their motion, Defendants filed a Rule 56.1 Statement.  ECF No. 122-1.  Plaintiff

included in his opposition papers a "Statement of Controverted Facts," which the Court considers

to be effectively a Rule 56.1 Statement.  *See* ECF No. 124 at 3.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is

'material' for these purposes when it 'might affect the outcome of the suit under the governing

law.'" *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *cert. denied*, 565 U.S. 1260 (2012).

No genuine issue of material fact exists "unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S.

at 249-50 (citations omitted).  "Summary judgment allows the court to dispose of meritless

claims before becoming entrenched in a frivolous and costly trial." *Tavares v. City of New York*,

No. 17-CV-05221, 2020 WL 2563189, at *2 (E.D.N.Y. Apr. 6, 2020) (citing *Knight v. U.S. Fire

Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)).

The moving party bears the initial burden of establishing the absence of any genuine

issue of material fact.  *See Liberty Lobby*, 477 U.S. at 256; *Holcomb v. Iona Coll.*, 521 F.3d 130,

137 (2d Cir. 2008).  This showing can be accomplished by citation to "materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . , admissions, interrogatory answers, or other materials."  *See* Fed. R. Civ. P.

56(c).  The moving party may show *prima facie* entitlement to summary judgment by either: (1)

pointing to evidence that negates an opponent's claims; or (2) identifying portions of an

opponent's evidence that demonstrate the absence of a genuine issue of material fact.

*Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp v. Catrett*, 477

U.S. 317, 323 (1986) and *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).  To determine

whether the moving party has carried its burden, the Court is required to "constru[e] the evidence

in the light most favorable to the nonmoving party and draw[] all inferences and resolv[e] all

ambiguities in favor of the nonmoving party." *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin*, 467 F.3d at 273; *accord Miller v. Nassau Health Care Corp.*, No. 09-CV-05128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "[T]he nonmovant cannot rest on allegations in the pleadings" but, rather, "must point to specific evidence in the record to carry its burden on summary judgment," *Salahuddin*, 467 F.3d at 273, offering "concrete evidence from which a reasonable juror could return a verdict in its favor," *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Liberty Lobby*, 477 U.S. at 256). *See also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In resolving a summary judgment motion, the Court must not "weigh evidence or assess the credibility of witnesses." *Tavares*, 2020 WL 2563189, at *3 (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

The same standards for summary judgment apply where, as here, the nonmovant is proceeding *pro se*. *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015). However, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *accord Leckie*

*v. City of New York*, No. 18-CV-03917, 2021 WL 84234, at *4 (E.D.N.Y. Jan. 11, 2021).  Thus,

even at the summary judgment stage, "the submissions of a *pro se* litigant must be construed

liberally and interpreted to raise the strongest arguments that they suggest."  *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks and emphasis omitted);

*see also Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003).  Nevertheless, the

"application of this different standard does not relieve plaintiff of his duty to meet the

requirements necessary to defeat a motion for summary judgment."  *Jorgenson*, 351 F.3d at 50

(quotation marks omitted).

## DISCUSSION

The Amended Complaint sets forth a claim against Defendants, pursuant to Section 1983,

for false arrest, false imprisonment, and malicious prosecution.  Am. Compl. ¶¶ 2, 23.

Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,'

including under the Constitution."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To sustain a claim brought under Section

1983, "[t]he conduct at issue 'must have been committed by a person acting under color of state

law' and 'must have deprived a person of rights, privileges, or immunities secured by the

Constitution or laws of the United States.'"  *Id.* (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d

Cir. 1994)).  Moreover, a plaintiff must allege the direct or personal involvement of each of the

defendants in the alleged constitutional deprivation.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d

Cir. 2010); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Terebesi v. Torreso*, 764 F.3d

217, 243 (2d Cir. 2014).

I.      **False Arrest and False Imprisonment Claims**

A.      **Applicable Law**

Plaintiff bases his Section 1983 claim in part on his claims of false arrest and false imprisonment under the Fourth Amendment of the United States Constitution.  *See* Am. Compl. ¶ 23.

The requisite elements for a false arrest claim under Section 1983 are substantially the same as those under New York Law.  *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).  In addition, "[f]alse arrest and false imprisonment claims are considered identical."  *Bail v. Ramirez*, 04-CV-05084, 2007 WL 959045, *6 (S.D.N.Y. March 29, 2007) (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)); *see also Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) ("The common law tort of false arrest is a species of false imprisonment." (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)); *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 178 n.11 (E.D.N.Y. 2002) (explaining that, under New York law, "[t]he elements of false imprisonment are essentially the same as those of false arrest"), *aff'd*, 59 F. App'x 409 (2d Cir. 2003).

To prevail on a false arrest or false imprisonment claim, a plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.  *See Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018); *Weyant*, 101 F.3d at 853; *accord Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975).  The existence of probable cause, which renders confinement privileged, forms a complete defense to either type of claim. *See Jenkins*, 478 F.3d at 84.

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (alternation in original) (quoting *Weyant*, 101 F.3d at 852); *see also Alvarado v. City of New York*, 453 F. App'x 56, 58 (2d Cir. 2011) (citing *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987)).

"Probable cause is to be assessed on an objective basis." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); *see Jenkins*, 478 F.3d at 88. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153 (citing *Whren v. United States*, 517 U.S. 806, 812-23 (1996)). The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (quoting *Whren*, 517 U.S. at 814).

"The burden of establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citing *Brown v. City of New York*, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004)). The existence of probable cause may be determined as a matter of law at the summary judgment stage "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852 (citing *Singer*, 63 F.3d at 118-19); *see*

*also Jenkins*, 478 F.3d at 88 (explaining that, "under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable").

**B.     Defendants are Entitled to Summary Judgment on Plaintiff's False Arrest and False Imprisonment Claims**

Under New York Vehicle and Traffic Law Section 415-a(1), "[n]o person shall engage in the business of or operate as a vehicle dismantler unless there shall have been issued to him a registration in accordance with the provisions of this section."  That registration is to be issued by the State Commissioner of the Department of Motor Vehicles.  *See* N.Y. Veh. & Traf. Law § 415-a(1)-(3).  Two undisputed facts show that at the time they arrested Plaintiff, the Officers had sufficient reason to believe that Plaintiff was violating Section 415-a(1) and had probable cause to arrest him.

First, it is undisputed that while at the lot the second time, the Officers observed and photographed vehicles and various vehicle parts on the property.  *Compare* Defs.' 56.1 ¶¶ 9-10, *with* Am. Compl. ¶ 10 (explaining that the Officers "t[ook] pictures, ask[ed] questions, open[ed] hoods of vehicles, [and] perfom[ed] tasks on the vehicles"), *and* Pl.'s Br. at 3.  The video that Plaintiff recorded during the Officers' second visit supports the fact that the Officers interacted with various vehicles and vehicle parts on the property.  *See, e.g.*, Ex. J at 5 (Plaintiff telling the Officers to "take pic[tures]"), 6 (Plaintiff discussing a "Honda, Accord, 94" in response to one of the Officers asking, "Where is this car from?"), 8 (Plaintiff responding "[a] pump" to one of the Officers asking, "What's in here?"), 16 (Plaintiff describing the "[s]tuff on the trailer" as "for the Honda . . . to fix the gold one that you guys [*i.e.*, the Officers] took a picture of before").

Second, the evidence in the record shows that shortly before his arrest, Plaintiff admitted several times to the Officers that he lacked the state registration required to dismantle vehicles on

the lot.  Although Plaintiff appears to contest whether this fact is, indeed, undisputed, *see* Pl.'s

Br. at 3, the record does not reveal a *genuine* dispute of material fact with respect to this issue.

The Officers allege that, during their second visit to the lot, Plaintiff "admitted to them several

times that the dismantling lot was his and that he did not have a dismantler's registration from

New York State."  Defs.' 56.1 ¶ 9.  Plaintiff alleges generally that he "never made the

inculpatory statements which the officers attributed to him."  *See* Am. Compl. ¶ 15; Pl.'s Br. at 3

(same).  However, that allegation is just the sort of "blanket denial" that cannot "defeat a motion

for summary judgment that is supported by evidence."  *Velazquez v. Yoh Servs., LLC*, No. 17-

CV-00842, 2019 WL 1448716, at *13 (S.D.N.Y. Mar. 15, 2019), *aff'd*, 803 F. App'x 515 (2d

Cir. 2020); *see Gustavia Home, LLC v. Rice*, No. 16-CV-02353, 2016 WL 6683473, at *3

(E.D.N.Y. Nov. 14, 2016) ("[T]he non-movant must provide more than conclusory and self-

serving statements to avoid summary judgment." (citing *Goenaga v. March of Dimes Birth

Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995))).  Moreover, the video of the encounter

contradicts Plaintiff's version of the facts.[4]  Specifically, as the video shows, Plaintiff told the

Officers that he was "still waiting for permits and stuff from the state," Ex. J at 1; that he was

"waiting for [his] state dismantler license," *id.*; and, later, after being told that he needed "to get

that dismantlers [sic] license," that he had been "waiting for the state" for "[a]bout . . . three

---

[4] "When the parties disagree as to the existence of a genuine dispute of a material fact, the Court
may consult incontrovertible video evidence to determine whether summary judgment is
nevertheless appropriate."  *Walker v. Raja*, No. 17-CV-05202, 2020 WL 606788, at *4
(E.D.N.Y. Feb. 7, 2020) (quoting *Wiles v. City of New York*, No. 13-CV-02898, 2016 WL
6238609, at *3 (S.D.N.Y. Oct. 25, 2016)); *see also Scott v. Harris*, 550 U.S. 372, 379-80
(2007).  Although "the mere existence of a videotape in the record depicting some or all of the
events in dispute will not *always* be dispositive at the summary judgment stage," *Hulett v. City
of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017), summary judgment is appropriate
"where the video evidence in the record is sufficient to 'blatantly contradict[]' one party's
versions of events," *id.* (alteration in original) (quoting *Scott*, 550 U.S. at 380).

months," *id.* at 7.  *See also* Ex. I.  Thus, to the extent that Plaintiff asserts that the Officers falsely attributed these admissions to him, that assertion is "blatantly contradict[ed]," *Scott*, 550 U.S. at 380, by incontrovertible evidence and so cannot preclude summary judgment.

Taking those two facts together – *i.e.*, that the Officers (1) observed vehicles and vehicle parts on Plaintiff's lot and (2) heard Plaintiff repeatedly indicate that he lacked the state registration required to dismantle vehicles – the Officers, at the time of Plaintiff's arrest, had "knowledge or reasonably trustworthy information" suggesting that Plaintiff was dismantling vehicles without the proper registration and thus had probable cause to arrest him.  *See Jenkins*, 478 F.3d at 84 (quoting *Weyant*, 101 F.3d at 852).

Beyond pointing to just those two facts, Defendants also argue that the Officers had probable cause because they acted in part based on a complaint from Crosby in which Crosby informed the SCPD that Plaintiff "was running an unregistered vehicle dismantling lot" at the site where the Officers later questioned Plaintiff.  Defs.' 56.1 ¶ 7.  Plaintiff concedes that Crosby submitted a complaint to the SCPD.  *See* Am. Compl. ¶ 24 (identifying Crosby as "the complainant in connection with the alleged crime for which plaintiff was charged and arrested").  Plaintiff contends, however, that Crosby's allegations were false, *id.* ¶¶ 24, 29; that Crosby made his complaint with the goal of having Plaintiff arrested, *see id.*; and that the Officers "arrested, imprisoned and prosecuted" Plaintiff "as a favor to Crosby," *id.* ¶ 24.  None of these allegations, however, calls into question whether the Officers had probable cause at the time that they arrested Plaintiff.

Generally, "a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness," *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.

2000)), "unless the circumstances raise doubt as to the person's veracity," *id.* (citing *Singer*, 63 F.3d at 119). Here, Plaintiff does not clearly allege that the Officers had reason to believe that Crosby might not be telling the truth in his complaint regarding Plaintiff. Even so, Plaintiff does allege facts suggesting that Crosby might have harbored ill will toward Plaintiff. Specifically, Plaintiff alleges that he and Crosby were tied up in a "real property dispute," Am. Compl. ¶ 17, and suggests that Crosby considered Plaintiff to be squatting on his (*i.e.*, Crosby's) property, *id.* ¶ 24. Had the Officers known of these facts – and the allegation that they arrested Plaintiff "as a favor to Crosby," *id.*, suggests that they might have – they would have had reason to doubt the veracity of Crosby's complaint. Accordingly, mindful of Plaintiff's *pro se* status, the Court proceeds as though there is a genuine dispute of fact as to whether the Officers had reason to believe that Crosby was being untrue.

However, "[w]here there are doubts as to a witness' truthfulness," courts in this Circuit have not required that the witness's complaint "be wholly ignored," but, rather, have merely required the police to collect additional information to support the witness's complaint. *Bail*, 2007 WL 959045, at *7; *see also Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003); *Pearson v. Lorancaitis*, No. 09-CV-01641, 2012 WL 162355, at *9 (D. Conn. Jan. 19, 2012) (collecting cases); *Jovanovic v. City of New York*, No. 04-CV-08437, 2006 WL 2411541, at *7 (S.D.N.Y. Aug. 17, 2006).

As the undisputed facts show, that is precisely what the Officers did here. After the submission of Crosby's complaint, the Officers visited the lot, spoke with Plaintiff, and found independent evidence suggesting his wrongdoing – namely, the vehicles and vehicle parts on the lot and Plaintiff's admissions that he lacked the proper registration to be dismantling vehicles. *Cf. Pearson*, 2012 WL 162355, at *9 (granting summary judgment with respect to a Section

14

1983 claim for false arrest where the defendant officers acted on an unreliable tip but, rather than "simply rely[ing] on [the victim's] version of events," the officers "proceeded to the [plaintiff's] residence to interview [him] and get his side of the story," at which point they learned of other information justifying the plaintiff's arrest).  Accordingly, even accepting that there is a genuine dispute as to whether the Officers had reason to doubt the veracity of Crosby's complaint, that dispute does not disturb the Court's conclusion that the Officers had probable cause to arrest Plaintiff by the time they did so.

Plaintiff's assertion that the Officers arrested him as a favor to Crosby falls flat for similar reasons.  "[I]t is well established that an officer's state of mind is irrelevant to the probable cause analysis."  *Id.* at *12.  Indeed, "[w]here probable cause exists for the arrest, the officer's underlying motive in arresting and charging the plaintiff will not be examined by the courts."  *Martinsky v. City of Bridgeport*, 814 F. Supp. 2d 130, 156 (D. Conn. 2011*), aff'd,* 504 F. App'x 43 (2d Cir. 2012); *see also Singer*, 63 F.3d at 120 ("We have held previously that if the officer . . . had probable cause . . . we will not examine the officer's underlying motive in arresting and charging the plaintiff.").  Accordingly, because the record shows that the Officers had probable cause, the Court need not entertain arguments concerning their underlying motives in arresting Plaintiff.  *See Devenpeck*, 543 U.S. at 153; *see, e.g.*, *Martinsky*, 814 F. Supp. 2d at 156 (rejecting on the same ground plaintiff's argument that defendant officers had "conspired . . . to effectuate [his] unlawful arrest").

Because the undisputed facts, even when construed in the light most favorable to Plaintiff, reveal that the Officers had probable cause to arrest Plaintiff when they did, Plaintiff has not carried his burden of proving that his arrest was not privileged.  *See Wright*, 887 F.3d at 587; *see also Thomas v. City of New York*, No. 11-CV-02219, 2013 WL 1325186, at *6-7

15

(S.D.N.Y. Apr. 2, 2013) (granting summary judgment in defendants' favor where the facts, construed in the light most favorable to plaintiff, supported a finding that probable existed to support plaintiff's arrest), *aff'd*, 562 F. App'x 58 (2d Cir. 2014).  Accordingly, Defendants are entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims.  *See Dash v. Montas*, No. 17-CV-00515, 2020 WL 1550708, at *8 (E.D.N.Y. Mar. 31, 2020).

## II.     Malicious Prosecution Claim

### A.     Applicable Law

Plaintiff also brings a malicious prosecution claim against Defendants.  "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under [New York] state law."  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted).  "In New York, the four essential elements of a malicious prosecution claim are: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'"  *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)).  "Further, '[i]n order to allege a cause of action for malicious prosecution under § 1983, [the plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'"  *Azeez v. City of New York*, 790

F. App'x 270, 273 (2d Cir. 2019) (alterations in original) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

**B.     Defendants are Entitled to Summary Judgment on Plaintiff's Malicious Prosecution Claim**

Plaintiff's malicious prosecution claim fails because, on the undisputed facts of this case, Plaintiff cannot demonstrate two of the required elements for such a claim: (1) that his prosecution was unsupported by probable cause; and (2) that his prosecution was terminated in his favor.

First, Plaintiff cannot prove that he was prosecuted without probable cause. "For malicious prosecution claims, probable cause 'has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.'" *Moroughan v. County of Suffolk*, No. 12-CV-00512, 2021 WL 298714, at *25 (E.D.N.Y. Jan. 20, 2021) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013)). "In cases where the police had probable cause to arrest, in order to succeed on a malicious prosecution claim, a plaintiff must show that 'authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest.'" *Id.* (quoting *Nzegwu v. Friedman*, No. 10-CV-02994, 2014 WL 1311428, at *11 (E.D.N.Y. Mar. 31, 2014)).

Here, the Officers had probable cause to arrest Plaintiff, and "the commencement and continuation" of Plaintiff's prosecution "was similarly supported." *See Weiner v. McKeefery*, 90 F. Supp. 3d 17, 35 (E.D.N.Y. 2015). Plaintiff has not produced or pointed to evidence in the record showing that exculpatory information came to light during the course of his prosecution; indeed, Plaintiff does not even *allege* that this occurred. Accordingly, his claim for malicious prosecution cannot be maintained. *Jimenez v. City of New York*, No. 15-CV-03257, 2016 WL

1092617, at *4 (E.D.N.Y. Mar. 21, 2016) (holding that, because "plaintiff offers no additional facts to show that [probable cause] dissipated post-arrest, [his] claim for malicious prosecution cannot be maintained" (citing *Carson v. Lewis*, 35 F. Supp. 2d 250 (E.D.N.Y. 1999))); *see also Garcia v. County of Westchester*, No. 11-CV-07258, 2017 WL 6375791, at *25 (S.D.N.Y. Dec. 12, 2017).  As a result, the Officers are entitled to summary judgment on this claim as well.

Moreover, summary judgment on this claim is appropriate for a second, alternative reason – specifically, because the undisputed facts also show that Plaintiff cannot prove that his prosecution was terminated in his favor.

As the United States Court of Appeals for the Second Circuit has explained "in discussing 'the constitutional tort of malicious prosecution in an action pursuant to § 1983,' where a dismissal in the interest of justice 'leaves the question of guilt or innocence unanswered,' it cannot provide the favorable termination required as the basis for that claim." *Lanning v. City of Glens Falls*, 908 F.3d 19, 28-29 (2d Cir. 2018) (alterations omitted) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 367-68 (2d Cir. 1992)); *accord Blount v. City of New York*, No. 15-CV-05599, 2019 WL 1050994, at *2 (E.D.N.Y. Mar. 5, 2019) (describing *Lanning* as "reaffirm[ing] that the 'favorable termination' element of a federal malicious prosecution claim requires 'affirmative indications of innocence'" (quoting *Lanning*, 908 F.3d at 25)).

Here, the criminal charge against Plaintiff was dismissed by the District Court for the County of Suffolk pursuant to New York Criminal Procedure Law Section 170.30, which permits dismissal "in the interest of justice."  Defs.' 56.1 ¶ 15; Am. Compl. ¶ 18; Ex. P (file jacket indicating that Plaintiff's case was "DISM" pursuant to "170.30," on September 20,

2010).[5]  The record does not indicate that the District Court for the County of Suffolk expressed

a view as to Plaintiff's guilt or innocence; nor does the record contain any other affirmative

indication of Plaintiff's innocence.  Accordingly, the dismissal of Plaintiff's case under New

York Criminal Procedure Law Section 170.30 cannot support a claim for malicious prosecution.

*See Gondola v. City of New York*, No. 16-CV-00369, 2020 WL 1433874, at *6 (E.D.N.Y. Mar.

24, 2020) (explaining that, where the record "is silent about the reason for the dismissal," a

plaintiff cannot prove the occurrence of a favorable termination); *see also Foy v. City of New*

*York*, 17-CV-00406, 2019 WL 3717317, at *7 (E.D.N.Y. Aug. 7, 2019) (granting summary

judgment to defendants on plaintiff's malicious prosecution claim where plaintiff's criminal case

was dismissed on motion of the district attorney, without explanation, because that dismissal did

not affirmatively indicate plaintiff's innocence).

 In sum, the undisputed facts show that Plaintiff cannot prevail on his malicious

prosecution claim.  Accordingly, Defendants are entitled to summary judgment on this claim.[6]

## III. Plaintiff Has Not Identified Any Alternative Violation of His Constitutional Rights

 As set forth above, Plaintiff's Amended Complaint alleges three violations with respect

to Defendants: false arrest, false imprisonment, and malicious prosecution.  *See* Am. Compl.

---

[5] Although Plaintiff asserts that his case was dismissed pursuant to both New York Criminal Procedure Law Section 170.30 *and* Section 160.50, Am. Compl. ¶ 18, his case could not have been dismissed pursuant to Section 160.50, because that provision does not provide any basis for dismissal but, rather, merely authorizes the sealing of records *upon* dismissal.  *See* N.Y. Crim. Proc. Law. § 160.50.  Regardless, to the extent that Plaintiff's seemingly mistaken assertion creates a dispute of fact, it is not the sort that precludes summary judgment, because Plaintiff has adduced no "concrete evidence" showing that his case was dismissed pursuant to any section other than Section 170.30.  *See Dister*, 859 F.2d at 1114.  Meanwhile, the evidence in the record – specifically, the copy of the file jacket in Plaintiff's case – shows that the case was dismissed pursuant to just Section 170.30.  *See* Ex. P.

[6] Having resolved Defendants' motion on the reasons set forth above, the Court need not and does not consider the parties' qualified immunity arguments.

¶¶ 2, 23.  The Amended Complaint, filed by Plaintiff *pro se*, however, could be liberally construed, *see Triestman*, 470 F.3d at 474, to suggest that Plaintiff intended to allege: (1) a claim that he was subjected to an unlawful search because the Officers searched the lot "without a warrant," Pl.'s Br. at 3; *see also* Am. Compl. ¶ 10; and (2) a claim that the Officers violated his rights under the Fifth Amendment by failing to give him his *Miranda* warnings before questioning him both at the lot prior to his arrest and at the SCPD's Seventh Precinct following his arrest, Pl.'s Br. at 3; *see also* Am. Compl. ¶¶ 13-14.  Neither of these claims appears to be sufficiently pled and, in any event, cannot salvage Plaintiff's Section 1983 claim.

First, it is well established that the warrantless search of a vehicle dismantling business, in circumstances like those here, cannot form the basis for a claim under Section 1983.  *See* N.Y. Veh. & Traf. Law § 415-a(5) (permitting the warrantless inspection of vehicle dismantling businesses); *New York v. Burger*, 482 U.S. 691, 712 (1987) (holding that Section 415-a(5) does not violate the U.S. Constitution and explaining that "[a] search conducted pursuant to § 415-a5 . . . clearly falls within the well-established exception to the warrant requirement for administrative inspections of 'closely regulated' businesses").[7]  Second, even if the Officers were required to read Plaintiff his *Miranda* warnings and failed to do so, that failure cannot form the basis for an action under Section 1983.  *Chavez v. Martinez*, 538 U.S. 760, 772 (2003)

---

[7]  The Court notes that the New York Court of Appeals has held that Section 415-a(5) is unconstitutional under the New York State Constitution.  *See People v. Scott*, 79 N.Y.2d 474, 495-501 (1992).  "However, a state's decision to expand a citizen's rights under state constitutional law [cannot] logically expand the protection provided by the U.S. Constitution. Accordingly, once a state departs from a federal constitutional standard, the citizen's enhanced right, which is strictly a product of state law, cannot be vindicated under § 1983."  *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 288 (S.D.N.Y. 2009); *cf. We Buy, Inc. v. Town of Clarkstown*, No. 06-CV-01794, 2006 WL 3016314, at *6 (S.D.N.Y. Oct. 20, 2006) (explaining, in the Fourth Amendment context, that a "more protective state law" does not expand federal constitutional rights for purposes of a Section 1983 claim).

(explaining that an alleged failure to provide *Miranda* warnings, standing alone, does not form the basis for liability under Section 1983); *accord London v. Nassau Cnty. Dist. Att'y's Off.*, No. 20-CV-03988, 2020 WL 7699644, at *6 (E.D.N.Y. Dec. 28, 2020).

Accordingly, even construing Plaintiff's filings to allege constitutional violations beyond just false arrest, false imprisonment, and malicious prosecution, those alleged violations, on the undisputed facts before the Court, cannot support a Section 1983 claim.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED in its entirety.

The Clerk of Court is respectfully directed to (1) mail a copy of this Memorandum & Order to Plaintiff and (2) enter judgment and close the case.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: April 22, 2021
       Brooklyn, New York